UNITED STATES of America, Plaintiff,

v.

GRAND TRUNK WESTERN RAILROAD COMPANY, Defendant.

and

American Institute for Shippers' Association, Inc., and National Association for Shippers' Agents, Intervening Defendants.

No. K78–678 CA4.

United States District Court, W. D. Michigan, S. D.

Dec. 29, 1980.

Jan. 28, 1981.

Agnes Kempker-Cloyd, Robert C. Greene, Asst. U. S. Attys., Grand Rapids, Mich., and R. P. Srivastava, Chicago, Ill., for the United States of America, plaintiff.

John C. Danielson, Detroit, Mich., and Charles E. Starbuck, Early, Starbuck & Lennon, Kalamazoo, Mich., for Grand Trunk Western R. Co., defendant.

Ronald N. Cobert, Grove, Jaskiewicz, Gilliam & Cobert, Washington, D. C., and Thomas J. Mulder, Varnum, Riddering, Wierengo & Christenson, Grand Rapids, Mich., for intervening defendants.

## OPINION

BENJAMIN F. GIBSON, District Judge.

This matter comes before this Court pursuant to a motion to suppress, motions to intervene, and a motion to strike the proposed joint answer of the prospective intervening parties brought by various parties. A hearing was held on December 19, 1980, to consider defendant's motion to suppress certain evidence seized by a Government agent in late-1975. The motions to intervene and the motion to strike have been briefed fully and this Court has decided the issues presented therein without the benefit of oral argument. For all of the reasons which follow, the Court denies defendant's motion to suppress, grants the prospective intervening parties' motions to intervene, and denies the Government's motion to strike the intervening parties' proposed joint answer.

*Motion to Suppress*

The defendant's motion to suppress focuses on certain documentary evidence seized at various times during the period beginning November 12, 1975, and ending December 30, 1975. The defendant contends that the Government's agent, Glen W. Hoover, seized these records (1) without first having secured an appropriate search warrant, (2) as a result of a "general" search instead of a search more limited in scope, (3) through misrepresentation of the purpose of his search, (4) without statutory authority to inspect and photocopy the defendant's records in the course of enforcing Interstate Commerce Commission regulations or the Interstate Commerce Act, and (5) without obtaining consent from the defendant before conducting his search, or if consent may have existed at one point, that consent was vitiated by Hoover's misrepresentation of the purpose of or authority to conduct the search. The Government's position is that (1) Hoover was acting with the authority vested in him by applicable statutes and regulations governing enforcement of the ICC regulations and orders, and (2) the defendant consented to the various searches and seizures. The Government abandoned its consent issue, relying instead at the oral argument on its agent's authority to conduct the search from which the defendant here seeks relief. In rebuttal, the defendant has contended that (1) the statute in existence *at the time of Hoover's search* did not confer on him any powers to conduct such a warrantless search, (2) the Government cannot promulgate regulations to give agents such as Hoover powers to conduct these types of searches when Congress allegedly did not intend to give such powers to these agents, and (3) the Government cannot prove any consent by the defendant to Hoover's search by "clear and convincing proof."

██ The defendant has not convinced the Court that the Government's agent exercised any powers beyond those to which he was entitled. In 49 U.S.C. § 20(5), which existed in 1975 when Hoover conducted his searches of the defendant's premises), agents such as Hoover were accorded powers to conduct certain types of searches of carriers regulated by the ICC. The statute reads, in relevant part:

*The Commission* or any duly authorized special agent, accountant, or examiner thereof shall at all times have authority to inspect and copy *any and all* . . . documents . . . of such carriers . . . as the Commission deems relevant to such person's relation to or transactions with such carrier. *The Commission* or its duly authorized special agents, accountants, or examiners shall *at all times* have access to all lands, buildings, or equipment of such carriers . . . and shall have authority under its order to inspect and examine *any and all* such land, buildings, and equipment. . . . [Emphasis supplied.]

Counsel for the defendant has presented no authority stating that the Interstate Commerce Commission itself may not commission certain agents to carry out the powers conferred in 49 U.S.C. § 20(5), the then-existing version of those powers. This Court has not found authority for such a proposition either. Yet, this effectively is what the ICC has done in promulgating and continually implementing 49 C.F.R. § 1000.5(c) (1967), *renewed in* 49 C.F.R. § 1000.5(c) (1973). This regulation, which was in effect at the time Hoover searched the defendant's premises, provides, in relevant part:

Definition of special agents, accountants, and examiners. The duties of the following described employees or positions, and such other employees of the Commission as the Chairman shall specify in writing, include those of special agent, accountant or examiner, and they are hereby authorized to inspect and copy records and to inspect and examine lands, buildings, and equipment *in the same manner and to the same extent as special agents, accountants, and examiners* :

.    .    .    .    .

*Railroad Service Agents* (Operations). . . . [Emphasis supplied.]

Therefore, it appears as though the ICC expressly conferred in Hoover, as a Railroad Service Agent, the powers given by Congress to "special agents, accountants, and examiners." The obvious question, then, is: "Did the ICC, in promulgating 49 C.F.R. § 1000.5(c), exceed Congress's mandate?" This Court is of the opinion that it did not. The Congress clearly gave the Commission itself the powers which it also desired to give to special classes of employees. The Commission may duly appoint certain of its employees as agents for the purposes of carrying out the powers conferred on it by Congress. This is clearly what the ICC has done in promulgating this regulation, and the Court cannot find anything constitutionally or statutorily infirm in doing that. Accordingly, this Court finds that Glen W. Hoover was an agent empowered with the authority to conduct searches or inspections under 49 U.S.C. § 20(5), and the product of his searches of the defendant's premises in late-1975 cannot be suppressed on this ground alone.

This Court's opinion in this regard is supported further by the recodified version of 49 U.S.C. § 20(5), now found in 49 U.S.C. § 11144(b) (1978). The new version of this statute substitutes "[t]he Commission, *or an employee designated by the Commission*," for "[t]he Commission or any duly authorized special agent, accountant, or examiner thereof." The section of the recodifying statute entitled "Legislative Purpose and Construction" states:

Sections 1 and 2 of this Act restate, without substantive change, laws enacted before May 16, 1978, that were replaced by those sections. *Those sections may not be construed as making a substantive change in the laws replaced.* [Emphasis supplied.]

Act of October 17, 1978, Pub.L. 95–473, § 3, 92 Stat. 1466 (1978). The newer statute, 49 U.S.C. § 11144, is part of Section 1 of the new Act. Accordingly, the phrase "or an employee designated by the Commission" ostensibly *restated* then-existing law, and did not substantively change it. Moreover, the notes to 49 U.S.C. § 11144(b) state: "[T]he words 'an employee designated by the Commission' are substituted for 'any duly authorized special agent, accountant, or examiner thereof' for clarity." *See* 49 U.S.C.A. § 11144(b), at 228–29 (1978); 49 U.S.C.A. § 11144(b) at 924 (1978).

The record shows that Hoover presented to the defendant's employees prior to initiating any search of its premises a set of credentials containing the following notice:

TO WHOM IT MAY CONCERN; THE BEARER HEREOF

GLEN W. HOOVER

RAILROAD SERVICE AGENT

is commissioned by the Interstate Commerce Commission to enter upon, to inspect and examine lands, buildings and equipment, and to inspect and copy records and papers of carriers and other persons subject to the Interstate Commerce Act and regulations of the Commission.

It was clear from these credentials, which contained Hoover's picture and signature, that the ICC had appointed Hoover as one of its agents for the purposes of carrying out its powers pursuant to 49 U.S.C. § 20(5). Exhibit 1, Defendant's Motion to Suppress Evidence Seized by the Government, p. 3.

■ The Court is unpersuaded by the defendant's remaining arguments concerning the "general" nature of Hoover's search and Hoover's alleged misrepresentation of his purpose of or "motive" in conducting a search of the defendant's premises. The defendant is part of a heavily-regulated industry, an industry on which the Congress has seen fit to impose extensive burdens so that ICC rules and regulations may be enforced efficiently. Of necessity, searches of regulated carriers or other persons must allow for general access to the records of those parties, lest the rules and regulations of the ICC become almost impossible to enforce. Furthermore, the Court cannot understand how a misrepresentation of an agent's purpose or "motive" in conducting a search under 49 U.S.C. § 20(5) or 49 U.S.C. § 11144(b) can affect the admissibility of any evidence seized during the course of the agent's inspection as long as the inspection did not exceed the bounds of the statutes cited above. The Court has not found any authority for the proposition that a misrepresented purpose or "motive" in conducting

a search taints the fruit of the search such that a punitive measure should be invoked by a court reviewing the agent's conduct so that the documents seized would be suppressed. In the case before this Court, therefore, even if Hoover represented to the defendant's employees that his search of the premises was "routine" and concealed from them that he had initiated a formal BOP 26 investigation for possible criminal or civil liability, the Court would not suppress the evidence thus obtained, for Hoover was empowered with the authority to conduct "routine" inspections as well as inspections pursuant to BOP 26 investigations.

*Motions to Intervene and Motion to Strike*

■ The American Institute for Shippers' Associations, Inc., and the National Association for Shippers' Agents, Inc. (hereinafter "intervening parties") have moved this Court for leave to intervene as defendants in this action. The Government has opposed these motions on the grounds that the validity of the regulations involved in this action will not be litigated, contending that the "only question which may be litigated before this Court is whether the defendant railroad has violated regulations of the Interstate Commerce Commission, which are conclusively presumed valid for the purposes of this proceeding." Plaintiff's Objection to Motion to Intervene and Motion to Strike Joint Answer of Intervenors, ¶ 5. Further, the Government maintains that exclusive jurisdiction to enjoin, set aside, suspend, or determine the validity of any rules, regulations, or final orders of the Interstate Commerce Commission rests with the United States courts of appeals, citing 28 U.S.C. § 2342(5) in support of this proposition. *Id.*, ¶ 2.

■ The intervening parties have filed alternatively under Rules 24(a)(2) and 24(b)(2) of the Federal Rules of Civil Procedure, seeking intervention as a matter or right or by leave of this Court. The Court believes that the intervening parties have made the requisite showings to be granted leave to intervene under Rule 24(b)(2).

Rule 24(b)(2) provides, in relevant part: Upon timely application anyone may be permitted to intervene in an action . . . when an applicant's defense and the main action have a question of law or fact in common . . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Rule 24 is to be construed liberally, although this Court in the sound exercise of its discretion under Rule 24(b)(2) must make a thoughtful determination of the question, and must duly consider the potential adverse impact on the original parties of its decision to allow intervention. *See Missouri-Kansas Pipe Line Co. v. United States*, 312 U.S. 502, 505, 61 S.Ct. 666, 667, 85 L.Ed. 975 (1941) (rejecting the argument that Rule 24 lists "a comprehensive inventory of the allowable instances for intervention" and holding that intervention on grounds completely outside of the rule may be required in the public interest); *see also* 7A Wright & Miller, Federal Practice and Procedure, Civil: § 1904 (1972) (collecting cases).

It is apparent from the affidavits filed by the intervening parties in support of their joint motion to intervene that the defense they would urge is identical to the defense already raised by the defendant in its pleadings. The defendant's second affirmative defense claims that the regulations upon which the Government relies in its case are void for vagueness and invalid. Likewise, the intervening parties, in their proposed Joint Answer of Intervenors, contend that the regulations upon which the Government relies in its case are void for vagueness and invalid. Accordingly, there exists an identity of defenses raised by the defendant herein and the intervening parties. *See* Answer of Defendant, Grand Trunk Western Railroad Company, Affirmative Defense No. 2; Affidavit of Patrick J. Judge, ¶ 4; Affidavit of Ray Camero, ¶ 4; Motion to Intervene as Defendants Under Rule 24, F.R. C.P., ¶ 4; Joint Answer of Intervenors, ¶ 1.

The Government has brought its action against the defendant herein under 49 U.S.C. § 16(8) (1887), as amended (now repealed and recodified under 49 U.S.C. § 11901(a) (1978)). It seeks from the defendant certain forfeitures for allegedly failing and refusing to comply with 49 C.F.R. § 1320.1. If the Government's allegations are proved, the defendant would be subject to a forfeiture of $5,000 for each offense.

The Government maintains that 28 U.S.C. § 2342(5) confers exclusive jurisdiction on the United States courts of appeals to decide questions concerning the validity of Interstate Commerce Commission regulations. That statute provides, in relevant part:

The court of appeals has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of . . . all rules, regulations, or final orders of the Interstate Commerce Commission made reviewable by [28 U.S.C. § 2321].

Section 2321(a) requires proceedings "to enjoin or suspend, in whole or in part, a rule, regulation, or order of the Interstate Commerce Commission" to be brought in the United States courts of appeals. 28 U.S.C. § 2321(a). Section 2321(b), however, expressly excepts from the jurisdiction of the courts of appeals orders "for payment of money or the collection of fines, penalties, and forfeitures." 28 U.S.C. § 2321(b). Further, the jurisdictional statutes governing the initiation of actions in district courts include the following provisions:

Except as otherwise provided by Act of Congress, the district courts shall have jurisdiction or any civil action to enforce, in whole or in part, any order of the Interstate Commerce Commission, and to enjoin or suspend, in whole or in part, any order of the Interstate Commerce Commission for the payment of money or the collection of fines, penalties, and forfeitures. [28 U.S.C. § 1336(a).]

Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or offi-

cer thereof expressly authorized to sue by Act of Congress. [28 U.S.C. § 1345.] In a recent case before the Sixth Circuit involving the validity of certain Interstate Commerce Commission orders respecting self-executing demurrage charges, the court considered in dictum the question of the jurisdiction a district court would have under certain circumstances:

> Nothing in the legislative history of the act indicates an intention to vest in courts of appeals any jurisdiction with respect to ICC orders other than the jurisdiction previously exercised by three-judge district courts. Under the new statute, actions to enjoin or suspend ICC orders are now brought to the courts of appeals, with single-judge district courts retaining jurisdiction to enjoin or suspend ICC orders for the payment of money or collection of fines. [Citation omitted.] Thus, actions for review of orders regarding monetary matters only are adjudicated by single-judge district courts pursuant to 28 U.S.C. § 1336(a). [Citation omitted.]

*Island Creek Coal Sales Company v. Interstate Commerce Commission*, 561 F.2d 1219, 1222 (6th Cir. 1977) (footnote omitted). It appears to this Court that the foregoing authorities confer jurisdiction on this district to resolve questions affecting the defendant's exposure to forfeitures, including the validity of any regulations promulgated by the Interstate Commerce Commission and on which the government now relies in seeking to ascribe liability to the defendant herein. Furthermore, as the intervening parties correctly point out in their reply brief, the defendant herein may defend against enforcement of 49 C.F.R. § 1320.1 on the grounds that that regulation is void for vagueness. As the court in *Quaker State Oil Refining Corp. v. United States,* 465 F.Supp. 75, 76 (W.D.Pa.1979), observed in a case in which the validity of an Interstate Commerce Commission order was challenged:

> It is still true that appeals orders in such cases granting or denying reparations or other orders of the ICC involving payment of money or collection of fines are

matters to be considered by the single judge district court. While 28 U.S.C. § 2321, as amended in 1977, provides for review of the Commission's orders generally in the courts of appeals, nevertheless an order of this sort is still to be reviewed by a single judge district court. See *Island Creek Coal Sales Co. v. I C C,* 561 F.2d 1219 (6th Cir. 1977).

Since this Court believes that the intervening parties are not initiating an action in the nature of a "collateral attack" and are not seeking injunctive relief such that under the old versions of 28 U.S.C. §§ 1336, 2321, and 2325 a three-judge panel would have been required, this Court has jurisdiction over the questions presented by the present defendant's tendered defense, and the intervening parties may be added as defendants in this action. *See B. F. Goodrich Co. v. Northwest Industries, Inc.,* 424 F.2d 1349 (3rd Cir. 1970), *cert. denied* 400 U.S. 822, 91 S.Ct. 41, 27 L.Ed.2d 50 (1971); *Sands v. Wainwright,* 491 F.2d 417 (5th Cir. 1973).

The Court has considered the possible adverse impact the addition of the intervening parties as defendants may have on the original parties herein. While the participation of the intervening parties in the discovery process may delay somewhat the preparation of this case for trial, the Court does not believe that this would result in "unduly" delaying the disposition of this matter. Further, the government has not presented to this Court any affidavits or other pleadings which would indicate that it would be prejudiced by the addition of the intervening parties. The Court is not independently aware of any such prejudicial impact. Inasmuch as the present defendant has not opposed the intervening parties' motion to intervene and "acknowledges" that their interest is proper within Rule 24, this Court's duties to weigh the potential adverse impact as to the present defendant is made much easier. Nevertheless, the Court believes that the present defendant's interests will not be prejudiced and the disposition of this matter as to it will not be unduly delayed by allowing the intervention of the

American Institute for Shippers' Associations, Inc., and the National Association for Shippers' Agents, Inc. *See* Memorandum of Defendant Grand Trunk Responding to Motion to Intervene, p. 1.

Accordingly, the intervening parties' motion to intervene is granted, and the Government's motion to strike the intervening parties' proposed joint answer is denied. The Clerk of the Court is hereby ordered to docket and file as a separate pleading in this action the proposed joint answer of the intervening parties previously filed on May 11, 1979, as part of the intervening parties' motion to intervene.

IT IS SO ORDERED.

## OPINION AND ORDER

This matter has reappeared before this Court pursuant to the Government's motion for reconsideration of this Court's order granting the intervening defendants the right to intervene under Rule 24(b)(2) of the Federal Rules of Civil Procedure, *United States v. Grand Trunk Western Railroad Co.,* 95 F.R.D. 463 (W.D. Mich. 1980). The Government also has sought to have this Court strike the original defendant's second affirmative defense relating to its claim that the regulation at issue herein, 49 C.F.R. § 1320.1, is void for vagueness. Additionally, the original defendant has moved for certification of this Court's December 29, 1980, order in which the Court denied that party's motion to suppress certain evidence seized by a railroad service agent of the Interstate Commerce Commission. *United States v. Grand Trunk Western Railroad Co., supra.* For all of the reasons which follow, all motions are denied.

*The Government's Motions*

The Government consistently has maintained that this Court lacks jurisdiction over the question of the validity of 49 C.F.R. § 1320.1, arguing that 28 U.S.C. § 2342(5) confers exclusive jurisdiction over this question on the courts of appeals. In its motion for reconsideration, the Government adds to this argument its contention that the intervening defendants are not subject to 49 C.F.R. § 1320.1, thereby viti-

ating any need for their participation in this litigation. The Court does not recall the Government's having raised any such objection to the intervention of the new parties-defendant in the past, but the Court will consider this new objection in the course of rendering its opinion as to the Government's motion to reconsider.

The jurisdictional dispute may be resolved by reviewing Chapter 158 of Title 28 of the United States Code *in toto,* 28 U.S.C. §§ 2341–2353. The Court agrees that Section 2342(5) confers on the courts of appeals jurisdiction over certain types of questions concerning the validity of Interstate Commerce Commission regulations, and over such questions the courts of appeals shall have exclusive jurisdiction. But Section 2342(5) confers such exclusive jurisdiction on the courts of appeals only as to those questions "made reviewable by section 2321 of this title." Section 2321(a) reads:

> Except as otherwise provided by an Act of Congress, *a proceeding to enjoin or suspend,* in whole or in part, a rule, regulation, or order of the Interstate Commerce Commission shall be brought in the court of appeals *as provided by and in the manner prescribed in chapter 158 of this title.* [Emphasis supplied.]

Section 2344 is a part of Chapter 158 also. It provides:

> On the entry of a final order reviewable under this chapter, the agency shall promptly give notice thereof by service or publication in accordance with its rules. Any party aggrieved by the final order may, within 60 days after its entry, file a petition to review the order in the court of appeals wherein venue lies. The action shall be against the United States.... The petitioner shall attach to the petition, as exhibits *copies of the order, report, or decision of the agency* .... [Emphasis supplied.]

A reading of Sections 2321, 2342, and 2344 leads this Court to only one conclusion, *viz.,* these jurisdictional statutes do not confer exclusive jurisdiction on the courts of appeals for resolving the issues presented in this case.

The Government has initiated this action by seeking civil forfeitures from the original defendant under 49 U.S.C. § 16(8) (1887), as amended and since repealed and recodified under 49 U.S.C. § 11901(a) (1978). The original defendant did not initiate the action as a challenge to 49 C.F.R. § 1320.1. It merely seeks to avoid enforcement of that regulation on the grounds that the regulation violates due process guarantees. And the intervening defendants have raised the same defense in their answer to the Government's allegations against the original defendant. The jurisdictional statutes contemplate reviews of orders of the Interstate Commerce Commission or "collateral attacks" as outlined more fully in this Court's opinion of December 29, 1980. These statutes do not deprive the Court of jurisdiction in cases in which neither an agency order nor a collateral attack is involved. The Government has invoked the jurisdiction of this Court by initiating this action in enforcement of 49 C.F.R. § 1320.1. Surely, it cannot claim that the original defendant cannot urge as a defense to the Government's claim an argument that that regulation is void for vagueness. To accept such an argument would be to require the Court to force the defendant to defend the Government's action only on the grounds that the alleged conduct did not amount to a violation of 49 C.F.R. § 1320.1; in other words, the defendant would not be able to argue to this Court that it did not know that it was violating any regulation because the regulation at issue was too vague and therefore contrary to the provisions of the Constitution governing due process. The Government would have the defendant refrain from litigating that issue here, and would force the defendant merely to preserve the issue for purposes of appeal and urge the merits of the vagueness issue at the court of appeals level *ab initio*. *This Court's reading of the applicable jurisdictional statutes, however, does not coincide with the Government's reading, and the Government's motions to reconsider and motion to strike are denied.*

It is clear that no agency has issued an order concerning the issues raised herein.

Accordingly, the defendants can appeal nothing at this stage. It is equally clear that the defendants challenge the validity of a regulation as an affirmative defense to the Government's claims, and not as an action in the nature of a collateral attack on that statute initiated by the defendants themselves. Thus, such attacks are not of the type contemplated by 28 U.S.C. § 2342(5) for the reasons given in this Court's December 29, 1980, opinion. Moreover, this action is not "a proceeding to enjoin or suspend, in whole or in part, a rule, regulation, or order of the Interstate Commerce Commission" as identified in 28 U.S.C. § 2321(a). It is a proceeding for the enforcement of a regulation of the Interstate Commerce Commission, and as such cannot properly be treated a falling within the exclusive jurisdiction of the courts of appeals under any of the jurisdictional statutes, and particularly within Section 2321(a).

The Court exercised its discretion in allowing the intervening defendants to intervene under Rule 24(b)(2). The Court stands by its reasons for doing so as detailed in its December 29, 1980, opinion. *United States v. Grand Trunk Railroad Co., supra.* The Government has argued for the first time in its motion for reconsideration that the intervening defendants are not subject to 49 C.F.R. § 1320.1. The intervening defendants, however, vigorously attack the Government's position in this regard, indeed having called that allegation "absurd." Memorandum of Points and Authorities in Opposition to Motion for Reconsideration, p. 1. Whether or not the regulation applies to the intervening defendants is a matter which the Court may decide after an evidentiary hearing, but need not be reached at this stage of the proceedings. The Court found on December 29, 1980 that the affidavits filed by the intervening defendants provided ample support for this Court's exercising of its discretion to allow their intervention. Unless persuaded otherwise by the facts, the Court must rely on the affidavits on file and the standards for intervention provided in the Federal Rules of Civil Procedure.

*The Motion to Certify Suppression Issue for Interlocutory Appeal*

On December 29, 1980, this Court denied the original defendant's motion to suppress certain evidence seized by a railroad service agent of the Interstate Commerce Commission. The reasons for denying that motion are detailed in full in this Court's opinion. *United States v. Grand Trunk Western Railroad Co., supra.* Those reasons need no further elaboration at this stage.

If the Court were to certify the issues posed by the original defendant, then presumably it would seek a permissive interlocutory appeal to the Sixth Circuit pursuant to 28 U.S.C. § 1292(b). This Court will not certify the issues raised by this defendant. This Court does not believe that certification is appropriate in this case in light of the purpose behind allowing appeals under 28 U.S.C. § 1292(b). The Sixth Circuit provided guidelines for district courts to follow in considering whether or not to certify questions for Section 1292(b) purposes in *Kraus v. Board of County Road Commissioners,* 364 F.2d 919 (6th Cir. 1966). This Court has studied *Kraus* and can conclude only that the original defendant has not presented a certifiable issue for Section 1292(b) purposes. Of particular note is the *Kraus* opinion's reference to Judge Shackelford Miller's report to the committee considering the enactment of Section 1292(b). Judge Miller observed:

> It is not thought that district judges would grant the certificate in ordinary litigation which could otherwise be promptly disposed of or that *mere question as to the correctness of the ruling* would prompt the granting of the certificate. The right of appeal given by the amendatory statute is limited both by the requirement of the certificate of the trial judge, who is familiar with the litigation and will not be disposed to countenance dilatory tactics, and by the resting of final discretion in the matter in the court of appeals, which will not permit its docket to be crowded with piecemeal or minor litigation.

*Kraus v. Board of County Road Commissioners, supra,* 364 F.2d at 921 (emphasis supplied).

This Court believes that the original defendant merely questions the correctness of the ruling of December 29, 1980, and has not presented to this Court through affidavits or otherwise any other justification for issuance of a certification of the questions which gave rise to the December 29, 1980, order such that a Section 1292(b) appeal could be initiated. The issuance of such certificates is within the sound discretion of this Court. Accordingly, the Court hereby exercises its discretion and denies the original defendant's motion for certification of the Court's December 29, 1980, suppression order. *See also In re April 1977 Grand Jury Subpoenas,* 584 F.2d 1366 (6th Cir. 1978) (collecting cases); *Berry v. School District of Benton Harbor,* 467 F.Supp. 721 (W.D. Mich. 1978); 16 Wright & Miller, Federal Practice and Procedure, *Civil:* §§ 3929–3930 (1977 and supp. 1979); *Dorwood v. Consolidated Rail Corp.* (E.D. Pa. 1980).