**Lenore CRONOVICH, Plaintiff,**

v.

**Richard DUNN, et al., Defendants.**

**Civ. No. 81–70518.**

United States District Court,
E.D. Michigan, S.D.

Oct. 11, 1983.

See also, 573 F.Supp. 1330.

Susan Winshall of Susan Winshall & Assoc., P.C., Southfield, Mich., for plaintiff.

Joseph A. Sullivan of Bodman, Longley & Dahling, Detroit, Mich., for all defendants except Gilmore.

Theordore Sachs of Marston, Sachs, Nunn, Kates, Kadushin & O'Hare, Detroit, Mich., for defendant Gilmore.

William McIntyre, Jr., Asst. Corp. Counsel for Wayne County, Detroit, Mich., for defendants O'Hair and Colombo.

## OPINION [*]

COHN, District Judge.

### I.

#### A.

Defendants, with the exception of defendant Rashid, have moved for a certification under 28 U.S.C. § 1292(b) to enable them to take an interlocutory appeal from parts of my order of September 6, 1983 denying a number of motions filed June 28, 1983. In particular defendants desire certification of the order denying:

1. The motion to dismiss plaintiff's Fourth Amended Complaint on the grounds that Title VII's policy making exception, 42 U.S.C. § 2000e(f), applies by implication to bar plaintiff's claim of sex discrimination and retaliation under 42 U.S.C. § 1983 in the failure to appoint plaintiff Acting Friend of the Court and Friend of the Court; [1] and,

---

[*] This is a revised version of my bench opinion of October 5, 1983.

1. On August 10, 1981 I dismissed plaintiff's claim under Title VII against the then sole defendant, the Third Judicial Circuit of Michigan, on the grounds that the position of Friend of the Court was policy making.

2. The motion for summary judgment on the grounds of qualified immunity because defendants were qualifiedly immune from liability in the actions they took on June 30, 1980 and January 19, 1981 in deferring and readvertising the open position of Friend of the Court.[2]

Plaintiff, in turn, has moved for reinstatement of the Title VII claim on the grounds the position of Friend of the Court is not policy making because the Friend of the Court does not serve at the pleasure of the appointing authority.

### B.

■ 28 U.S.C. § 1292(b) provides in part: When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate determination of the litigation, he shall so state in writing in such order.

Upon certification, the Court of Appeals may in its discretion permit an appeal to be taken. As explained in *Shepard's Manual of Federal Practice*, 2d Ed., § 8.87:

An order within the scope of 28 U.S.C. § 1292(b) must involve

1) a question of "law",

2) which is "controlling", and

3) on which there is "substantial ground for difference of opinion" and

4) an immediate appeal must "materially advance the ultimate termination of litigation".

■ Only in exceptional circumstances should a district court certify a question under § 1292(b), *Kraus v. Bd. of County Road Commissioners*, 364 F.2d 919 (6th Cir.1966); *Cardwell v. Chesapeake & Ohio R.R. Co.*, 504 F.2d 444 (6th Cir.1974); *Usaco Coal Co. v. Carbomin Energy, Inc.*, 550

F.Supp. 19 (W.D.Ky.1982). A question as to the correctness of a ruling alone is not sufficient grounds for certification. *United States v. Grand Trunk Western R.R. Co.*, 95 F.R.D. 463 (W.D.Mich.1981), and granting certification is within the sound discretion of the district court judge. *Id.* at 471.

### II.

While defendants have not moved for certification of my ruling that they are not entitled to absolute judicial immunity, further discussion of this issue is in order. I have found on further review of the cases that there is some confusion over the scope of the immunity granted judges in making personnel appointments. The cases are not as crystal clear as I initially thought. *See* chart attached as Exhibit A, prepared by the National Judicial College for presentation at the 1983 Annual Meeting of the State Bar Association of Michigan, September 30, 1983.

In *Allen v. Burke*, 690 F.2d 376 (4th Cir.1982), the court held that attorney fees can be recovered against a judicial official under 42 U.S.C. § 1988 when prospective relief is properly awarded against the official. It appears from the decision that it was intended that a magistrate be personally obligated for the attorney fees rather than limiting her obligation to payment from public funds. On April 25, 1983 the Supreme Court granted certiorari, *Pulliam v. Allen*, — U.S. —, 103 S.Ct. 3108, 77 L.Ed.2d 1364 (1983). The National Conference of State Trial Judges Task Force on Judicial Immunity has filed a brief *amicus curiae*. See 22 *Judges Journal*, No. 3, page 1.

*Pulliam* arose from Judge Pulliam's practice of incarcerating indigent defendants who were unable to make nominal bail on misdemeanor charges. The Fourth Circuit held the practice unconstitutional, affirmed the injunction issued by the district

---

2. I denied this motion because I found that plaintiff made a substantial claim of sex discrimination and retaliation, and that the factual

record regarding the claims in question was incomplete.

court and upheld an award of attorney fees under § 1988 against Judge Pulliam. The precise issue on appeal, therefore, is whether judicial immunity covers a member of the judiciary acting in a judicial capacity under 42 U.S.C. § 1988. While that is a different question than the one involved in this case, the grant of certiorari suggests some pause over the certainty of the rule I stated in my earlier opinion on this issue.

Two decisions from the Northern District of Indiana are more to the point. In *Blackwell v. Cook*, 570 F.Supp. 474 (N.D.Ind. 1983), Chief Judge Sharp held that an employee who alleged she had been fired by a judge for exercising her First Amendment rights in violation of the equal protection and due process clauses of the Fourteenth Amendment could not sue the judge under 42 U.S.C. § 1983 because the judge was absolutely immune, saying:

> [t]he plaintiff is closely allied with the exercise of the Circuit Court's discretion in the handling of individual cases. Mrs. Blackwell has dealt with the Circuit Court in its capacity as a judge and has aided it in the performance of judicial acts. As a result her prayer for damages growing out of those acts and relationships has no support in light of the doctrine of judicial immunity under 42 U.S.C. § 1983.

At 479. In his decision in *Blackwell*, Chief Judge Sharp cites *Pruitt v. Kimbrough*, 536 F.Supp. 764 (N.D.Ind.1982), which held that a probation officer could not successfully sue a judge *qua* employer for damages under 42 U.S.C. § 1983 in an action for wrongful discharge. In an earlier phase of *Pruitt* the Court of Appeals for the Seventh Circuit in an unpublished order, *Pruitt v. Kimbrough*, 665 F.2d 1049 (7th Cir.1981), said:

[t]he judges argue that because the granting of probation is a judicial act normally performed by judges and cloaked with immunity, the appointment of personnel to assist them in carrying out this function is also a judicial act, and must be similarly protected.

We agree.

. . . . .

[w]e find that the relationship, and the judges' acts of appointing, supervising, and discharging probation officers are intimately related to the judicial process .... As Pruitt's ultimate supervisors, the judges were functioning in a judicial capacity. These judicial acts are immune from damages liability.

Order of September 10, 1981 at 5.

▪ Finally I observe that under the authority of *Forsyth v. Kleindienst*, 700 F.2d 104 (3rd Cir.1983), and *McSurely v. McClellan*, 697 F.2d 309 (D.C.Cir.1982), my denial of defendants' motion to dismiss on the grounds of absolute immunity is appealable as of right. This broad interpretation of what is a final order, of course, may not be recognized by the Sixth Circuit.

### III.

▪ As to the question of qualified immunity, it relates to only one of plaintiff's three claims and therefore any final determination on this issue in defendants' favor would not dispose of this case. *See* 2 Fed. Proc., L.Ed. § 3:362 at 457. Certainly the right to be free of retaliation and sex discrimination is clear; an ambiguous constitutional right is not involved in this case. While not determinative, the Equal Employment Opportunity Commission determination of January 26, 1981[3] and the com-

---

**3.** The EEOC determination reads in relevant part as follows:

Regarding the Friend of the Court position, the record shows that a panel of three judges interviewed applicants for three positions at the same time—Friend of the Court, Administrative Assistant, and Legal Assistant—and recommendations for each one were sent to the court. Respondent promoted the candidates (both male) who were ranked number

one by the panel to Administrative Assistant and Legal Assistant. The panel ranked Charging Party number one for Friend of the Court. But rather than promoting her, Respondent decided to retain the Court Administrator as Acting Friend of the Court until at least January 1, 1981, when it may reopen the application process. Respondent admits that this is the first time the interviewing panel's number

ments in response by defendants (*see* Comments on Invitation to Participate In Settlement Discussions Re: Charge No. 054–80–4054 attached to the affidavit of defendant Dunn, filed February 19, 1981,[4] in opposition to plaintiff's motion for a temporary restraining order) makes clear that taken together the May 1980 solicitation of candidates for the open position of Friend of the Court, subsequent deferral of consideration and then readvertising, constituted a rejection of plaintiff's application.

Plaintiff's First Set of Interrogatories to the individual defendants emphasizes the uncertain nature of the factual record at this time. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1983), presumes a clear factual record on which to base a decision on a summary judgment motion brought on grounds of qualified immunity. The nature of each defendant's voting record with regard to plaintiff's application is critical. *See Bogart v. Unified School District*, 432 F.Supp. 895 (D.Kan. 1977). Contrary to defendants' assertion, Judge Pratt's decision in *Lodico v. United States*, 571 F.Supp. 21 (E.D.Mich.1982), does not support certification of the question of qualified immunity at this time; it suggests the exact contrary. Judge Pratt said:

> [T]he court must evaluate the alleged acts of each individual defendant and determine whether there remains any genuine issue as to any material fact which precludes granting summary judgment in favor of each defendant.

At 25.

.  .  .  .  .

If Konic denied plaintiff a job because of such conduct, his actions violated a clearly established constitutional right and he is accordingly not entitled to immunity

from suit. Therefore, to determine whether Konic is entitled to immunity the court must determine whether plaintiff's application was indeed denied because of her political beliefs and activities.

At 27.

■ As explained in 2 Fed.Proc., L.Ed. § 3:360 at 456:

> An appeal under 28 U.S.C.S. § 1292(b) should not be granted where the record does not present a case which is ripe for appellate determination. If the answer to a question of law is dependent on the development of a record at trial, such as where complicated questions of law and fact have been presented to the appellate court before they have been explored by the trial court, or if the record presented to the appellate court is unsatisfactory and confused, an interlocutory appeal should not be allowed, since an appellate court should not give an advisory opinion on unknown facts.

Assuming that the facts can be agreed upon (which is highly unlikely) or determined with sufficient clarity to allow for a decision on the qualified immunity issue on a summary judgment motion, the denial of such a motion may also be appealable as a matter of right. *See McSurely, supra.* There is simply no basis for certifying this issue at this time.

### IV.

As to whether the Title VII exemption for policy making positions is to be read into 42 U.S.C. § 1983, I have twice considered this question and twice decided there is no carryover.

■ My ruling does meet at least two of the criteria for an interlocutory appeal. First, this is a controlling question of law.

---

one candidate for Friend of the Court has not been promoted.

**4.** The comments read in relevant part:
... as we have previously pointed out, in June of 1980 when the judge decided to defer recommending someone for appointment to the office by the Governor, they did so for the following reasons:

1) They felt that their recommendation for appointment should be for one better qualified than those who had applied for same and that deferring recommendation would afford an opportunity to hopefully obtain a better qualified candidate....

If defendants are correct and the position is in fact policy making plaintiff has no case. Second, an immediate appeal might materially advance the ultimate termination of this litigation. What is missing is the third criteria—a substantial ground for a difference of opinion.

I am satisfied that my ruling is correct and the cases cited in opposition to it are not well reasoned. The effect of a reversal would, in my view, be a rewriting of § 1983. *See* Atkinson, *Law Making Judges*, 7 U. Tasmania L.Rev. 33 (1981).

As I have observed above, the Sixth Circuit limits interlocutory appeals under § 1292(b) to the extraordinary cases contemplated by the statute and is to be used only in cases where an intermediate appeal may avoid protracted and expensive litigation. My decision on this issue is not the type which, without immediate appeal, would result in a time-consuming retrial should it ultimately be found to be erroneous. If defendants are unsuccessful on the merits at trial and raise this issue on appeal, a reversal of my decision would likely dispose of the case without the necessity of a remand or retrial. Additionally, extensive discovery has been conducted and the case is almost three years old. It can more than likely be tried in its entirety before review of an interlocutory appeal can take place. *See Kennard v. United Parcel Service, Inc.*, 531 F.Supp. 1139, 1148 (E.D. Mich.1982).

## V.

Lastly, I must comment further on the question of whether the Friend of the Court is in fact a policy making position as defined in Section 701(f) of Title VII, 42 U.S.C. § 2000e(f). I initially so ruled in my bench opinion of August 5, 1981 and dismissed the Title VII claim in my order of August 10, 1981. My bench opinion is memorialized in the written opinion I filed on October 28, 1981. On February 3, 1983 I declined to reconsider the ruling.

Plaintiff's latest request is predicated on a statement in a National Center for State Courts Publication, *EEO and the Judicial Branch: An Outline of Policy and Law,* to the effect that one of the indicia of a policy making position is that the person serve at the pleasure of the elected official. Since the Friend of the Court, once appointed, may not be removed summarily, plaintiff argues the position is not policy making. Prior to July 1, 1983 when the Friend of the Court was formally appointed by the Governor, and now when the Friend of the Court is appointed by the chief judge of each judicial circuit, the Friend of the Court can only be removed for cause.[5]

■ I am not satisfied that the "serve at pleasure" quality of a position is necessary to exempt it from Title VII under Section 701(f). Nor am I convinced that the authority of a National Center for State Courts' publication is a sufficient basis for changing my prior ruling. No authority is cited in the publication for the "serve at pleasure" requirement. Moreover, were I to rule that the position was not exempt I would more than likely be faced with reconsidering my ruling dismissing the Third Judicial Circuit as a defendant.

Also, the parameters of the policy making exemption of Title VII are now before the Court of Appeals for the Sixth Circuit in an age discrimination case to be argued on October 28, 1983, *EEOC v. Board of Trustees of Wayne County Community College*, No. 83–1741. The decision in that case may further illuminate this obscure area of the law. Plaintiff has never moved under Fed.R.Civ.P. 54(b) that I amend the order of March 3, 1983 which dismissed the Third Judicial Circuit as a defendant. If I did amend, plaintiff could appeal the dismissal which in turn would allow her to raise the correctness of the order of August 5, 1981.

## VI.

An order will be entered denying the pending motions.

---

5. I was not offered any of the legislative history of this change in the manner of appointment of the Friend of the Court which might enlighten me about the legislature's perception of the position.